**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**JTH TAX LLC d/b/a LIBERTY TAX SERVICE,**
1716 Corporate Landing Parkway
Virginia Beach, Virginia 23454

**SIEMPRETAX+ LLC,**
1716 Corporate Landing Parkway
Virginia Beach, Virginia 23454                        Case No.:

   **Plaintiffs,**                                   <u>**VERIFIED COMPLAINT**</u>

   v.

**ANDREW C. PENNOYER**
3095 Spring Oak Ave.
Palm Harbor, Florida 34684

and

**NICHOLAS PENNOYER**
3095 Spring Oak Ave
Palm Harbor, Florida 34684

and

**HEATHER PENNOYER**
3095 Spring Oak Ave
Palm Harbor, Florida 34684

and

**KANE FINANCIAL SOLUTIONS LLC d/b/a**
**FREEDOM TAX SERVICE**
Serve: Legalinc Corporate Services Inc.
5237 Summerlin Commons, Suite 400
Fort Myers, Florida 33907

   **Defendants.**
_____/

<u>**PLAINTIFFS' VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**</u>

Plaintiffs JTH Tax LLC (f/k/a JTH Tax, Inc.) d/b/a Liberty Tax Service ("Liberty") and SiempreTax+ LLC ("SiempreTax") (collectively, "Plaintiffs"), by counsel, allege for their Verified Complaint against Defendants Andrew Pennoyer, Nicholas Pennoyer, Heather Pennoyer, and Kane Financial Solutions d/b/a Freedom Tax Service ("Freedom Tax") (collectively "Defendants"), and state as follows:

<u>**INTRODUCTION**</u>

1.      Andrew Pennoyer, a former Liberty franchisee, with the assistance of his son, Nicholas, and daughter-in-law, Heather, intentionally and deceptively conceived a plan to use Liberty's trademarks and good will to attract customers into the Liberty and SiempreTax franchise office located at 1816 US Highway 19, Holiday, Florida 34691, but then engage Liberty's customers for their own tax preparation services company, Freedom Tax.  This lawsuit is brought by Liberty and SiempreTax for preliminary and permanent injunctive relief and damages for violations of the Defendant Trade Secrets Act ("DTSA"), federal unfair competition, breach of contract, breach of promissory notes, and tortious interference.

2.      Starting in January 2015, Andrew Pennoyer entered into eight franchise agreements with Liberty and SiempreTax for the franchise territories known as FL024, FL026, FL047, FL054, and FL327 (collectively "Franchise Agreements").  Nicholas Pennoyer was a manager of Andrew Pennoyer's franchises.  During the 2018 tax season, Andrew Pennoyer, Nicholas Pennoyer, and Heather Pennoyer created a plan to divert royalties Andrew Pennoyer owed Liberty and SiempreTax pursuant to the Franchise Agreements.  Andrew Pennoyer used his close relatives to capitalize on the franchise relationship he developed and maintained with Liberty and SiempreTax and exploit Liberty and SiempreTax's Marks, goodwill, and trade secrets to line the Pennoyers'

pockets. At the direction of and in concert with Andrew Pennoyer, Nicholas Pennoyer and Heather Pennoyer created Kane Financial on April 15, 2019 (the last day of the 2018 tax season) the Pennoyers created Kane Financial, secreting Andrew Pennoyer's involvement by registering the company only under Nicholas and Heather Pennoyer's names. On December 20, 2019, Kane Financial registered Freedom Tax Service as its fictitious name.

3.      Defendants used Freedom Tax as a vehicle to hide revenue from which royalties are owed by Andrew Pennoyer as a franchisee to Liberty by filing tax returns outside of the Liberty system. Andrew Pennoyer displayed Liberty and SiempreTax's trademarks at the FL026 Franchise Location, which he was only permitted to do as a Liberty and SiempreTax franchisee and only for the purpose of preparing tax returns through the Liberty and SiempreTax system. Instead, Andrew Pennoyer allowed Nicholas Pennoyer and Heather Pennoyer to operate Freedom Tax out of the FL026 Franchise Location under Liberty and SiempreTax's trademarks. To date, Freedom Tax continues to operate out of the FL026 Franchise Location. On February 6, 2020, Plaintiffs terminated all Franchise Agreements. Andrew Pennoyer violated and continues to violate the FL026 Franchise Agreement by breaching the in-term non-competition covenants, breaching the post-termination covenants, disclosing Liberty's confidential information, and failing to pay royalties. Andrew Pennoyer similarly is breaching the post-termination covenants of the FL024, FL247, FL054, and FL327 franchise agreements. Nicholas and Heather Pennoyer and Freedom Tax are tortiously interfering with the Franchise Agreements by operating a tax return business at the FL026 Franchise Location. Further, Defendants are violating federal and state trademark and unfair competition laws through their deception about the origin of the tax preparation services, specifically by luring Liberty's customers into the Franchise Location under

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

the guise that they will receive tax preparation services from Liberty when in fact they are receiving tax preparation services from Freedom Tax.

4.      Plaintiffs seek an immediate injunction (1) enjoining Andrew Pennoyer from breaching the Franchise Agreements' non-competition covenants, (2) enjoining Defendants from using any of Liberty's Marks or any confusingly similar name, device, mark, service mark, trademark, trade name, slogan, or symbol to obtain revenue for Freedom Tax or any other individual or company that is not Liberty or SiempreTax, (3) enjoining Defendants from using any of Plaintiffs' confidential information, (4) enjoining Defendants from diverting or attempting to divert any customer or business from Liberty or to solicit or endeavor to obtain the business of any person who shall have been a customer of the Franchise Location for a period of two years; and (5) enjoining Nicholas Pennoyer, Heather Pennoyer, and Freedom Tax from tortiously interfering with the Franchise Agreement.

## **PARTIES**

5.      Plaintiff Liberty is a Delaware corporation with its principal place of business at 1716 Corporate Landing Parkway, Virginia Beach, Virginia 23454.  Liberty and its affiliates maintain franchises and company-owned income tax preparation offices throughout the United States, including the State of Florida.

6.      Plaintiff SiempreTax is a Virginia limited liability company with a principal place of business at 1716 Corporate Landing Parkway, Virginia Beach, VA 23454.

7.      Defendant Andrew Pennoyer is a citizen of the State of Florida with a last known residential address of 3095 Spring Oak Avenue, Palm Harbor, Florida 34684 and a business address of 1816 US Highway 19, Holiday, Florida 34691.

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

8.     Defendant Nicholas Pennoyer is a citizen of the State of Florida with a last known residential address of 3095 Spring Oak Avenue, Palm Harbor, Florida 34684.

9.     Defendant Heather Pennoyer is a citizen of the State of Florida with a last known residential address of 3095 Spring Oak Avenue, Palm Harbor, Florida 34684.

10.     Defendant Kane Financial Solutions, LLC d/b/a Freedom Tax Service ("Freedom Tax") is a Florida limited liability company with its principal place of business at 1816 US Highway 19, Holiday, Florida 34691 and mailing address of 3095 Spring Oak Avenue, Palm Harbor, FL 34684.  Defendants Nicholas Pennoyer and Heather Pennoyer are identified in the corporate records filed with the State of Florida as authorized members of Kane Financial.  Freedom Tax Service is Kane Financial Solutions, LLC's fictitious name.

## JURISDICTION AND VENUE

11.     This Court has personal jurisdiction over each of the Defendants because Andrew Pennoyer, Nicholas Pennoyer, and Heather Pennoyer are natural persons who are citizens of the State of Florida, and Freedom Tax is a Florida limited liability company whose members, Nicholas and Heather Pennoyer, are citizens of the State of Florida.

12.     This Court has original subject matter jurisdiction over this claim pursuant to the Lanham Act, 15 U.S.C. § 1051, *et seq*. and the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq*.  This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims under the Lanham Act and the DTSA.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, or a substantial part of property that is the subject of the action is situated in this District.

## FACTUAL BACKGROUND

**Liberty Franchise System**

14.     Liberty is a franchisor of Liberty Tax Service® income tax preparation service centers located throughout the United States, including the State of Florida.

15.     Liberty owns federally registered Liberty Tax Service® trademarks, service marks, logos, and derivations thereof (the "Liberty Marks"), including U.S. Registration Nos. 2314991 – "LIBERTY TAX SERVICE", 2465670 – "LIBERTY TAX", 2479692, 3167134, 3480370 – "CASH IN A FLASH", and 5509978, as well as the Liberty Tax Service® system, which sells income tax preparation and filing services and products to the public under the Liberty Marks.

16.     SiempreTax is a franchisor of SiempreTax® income tax preparation service centers located throughout the United States, including the State of Florida.

17.     SiempreTax owns the federally-registered SiempreTax® trademarks (trademark serial number 86386202), service marks, logos and derivations thereof (the "SiempreTax Marks"), as well as the distinctive and well-known SiempreTax® system, which sells income tax preparation and filing services and products to the public under the SiempreTax Marks.

18.     The Liberty Marks and SiempreTax Marks are collectively referred to as the "Marks".

19.     Plaintiffs advertise and promote the Marks throughout the United States, and have spent substantial time and money to maintain and improve their franchise systems, including, *inter alia*: (1) maintaining and developing service and product quality; (2) developing uniform designs and markings for their services; (3) licensing trademarks and other proprietary information to, and (4) training franchisees.

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

20.     Plaintiffs grant licenses to franchisees to use the respective Marks and participate in their confidential and proprietary business system pursuant to written franchise agreements, which are reasonably and carefully tailored to protect Plaintiffs' respective valuable confidential information, reputation, goodwill, and other legitimate business interests.

21.     Plaintiffs disclose certain confidential information, including methods of operation of franchise, customer information, and marketing information, to franchisees through their respective Operations Manuals, training manuals, training programs, and in providing guidance and assistance to its franchisees pursuant to a franchise agreement.  Plaintiffs require that their respective franchisees agree, that upon expiration, termination, or nonrenewal of a franchise agreement, they will never use, disclose, or permit the use or disclosure of Plaintiffs' respective confidential information in any manner whatsoever.  Plaintiffs require that upon termination, expiration, or nonrenewal of a franchise agreement, the former franchisee will stop using all literature and forms received from the respective Plaintiff, deliver to the respective Plaintiff all customer information, and deliver to the respective Plaintiff all copies of its Operations Manual and any updates thereto.

22.     As a result of these efforts and expenditures, the Marks have become associated in the minds of consumers with uniform goods and services of consistently high quality, provided only by persons following Plaintiffs' respectively approved sales, operating methods and procedures.

23.     Plaintiffs have used the Marks, along with the efforts of its hardworking employees, to grow from five offices in 1998 to over 3,000 today.

24.     Liberty has grown to be one of the largest tax preparation franchises in the U.S.A.

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

25.     Plaintiffs play an important role in the local Virginia Beach economy, as well as nation-wide, with a network of over 21,000 tax preparers.

26.     January through April is Plaintiffs' busiest time of year, during which time Plaintiffs generate approximately 90% of their annual revenue.

**Obligations Under the Franchise Agreements**

27.     On approximately August 31, 2014, Andrew Pennoyer purchased a Liberty franchise in Holiday, Florida from former Liberty franchisee Steve Doletzky for Franchise Territory FL026 (WestPascoFL-6).

28.     On approximately January 2, 2015, Andrew Pennoyer executed a franchise agreement for Liberty Franchise Territory FL026 (WestPascoFL-6) (the "FL026 Franchise Agreement"). **Exhibit A.** On this same date, he also entered into a franchise agreement with SiempreTax for the Liberty Franchise Territory FL026. **Exhibit B.**

29.     Andrew Pennoyer operated the FL026 Franchised Business from 1816 US Highway 19, Holiday, Florida 34691 (the "FL026 Franchise Location").

30.     On approximately December 7, 2015, Andrew Pennoyer purchased a franchise location from former Liberty franchisee Carolle Ryan for the Liberty Franchise Territory FL024 (WestPascoFL-4) and the Liberty Franchise Territory FL327 (NewPortRichyFL-1).

31.     On approximately December 22, 2015, Andrew Pennoyer executed franchise agreements for the Liberty Franchise Territories FL024 (WestPascoFL-4) (the "FL024 Franchise Agreement") and FL327 (NewPortRichyFL-1) (the "FL327 Franchise Agreement"). **Exhibits C, D.** On this same date, he also entered into franchise agreements with SiempreTax for the Liberty Franchise Territories FL024 and FL327. **Exhibits E, F.**

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

32.    On approximately June 8, 2017, Andrew Pennoyer purchased a franchise location for the Liberty Franchise Territory FL054 (PalmHarborFL-1).

33.    On approximately June 28, 2017, Andrew Pennoyer executed a franchise agreement for Liberty Franchise Territory FL054 (PalmHarborFL-1) (the "FL054 Franchise Agreement"). **Exhibit G.**

34.    On approximately January 1, 2018, Andrew Pennoyer purchased a franchise location from former Liberty Franchisee Desislava Kolaxazov for Liberty Franchise Territory FL047 (PinellasCountyFL-18).

35.    On approximately January 13, 2018, Andrew Pennoyer entered into a franchise agreement for the Liberty Franchise Territory FL047 (PinellasCountyFL-18) (the "FL047 Franchise Agreement"). **Exhibit H.**

36.    On approximately April 15, 2019, Kane Financial Solutions, LLC was organized in the State of Florida.  On approximately December 20, 2019, Kane Financial registered to do business under the fictitious name "Freedom Tax Service."   Freedom Tax's Articles of Organization name Nicholas Pennoyer and Heather Pennoyer as its authorized members, identify 1816 US Highway 19, Holiday, Florida 34691 as its principal office and identify 3095 Spring Oak Avenue, Palm Harbor, Florida 34684 as its mailing address.

37.    The FL026 Franchise Agreement, FL024 Franchise Agreement, FL327 Franchise Agreement, FL054 Franchise Agreement, FL047 Franchise Agreement and the corresponding SiempreTax Agreements are collectively referred to as the Franchise Agreements.

38.    Pursuant to the Franchise Agreements, Plaintiffs provided Andrew Pennoyer with training in franchise operation, marketing, advertising, sales, and business systems.  Andrew Pennoyer also received a copy of Plaintiffs' respective confidential operating, marketing, and

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

advertising materials, which are not available to the public or to anyone who is not part of Plaintiffs' respective business systems.

39.    In exchange for Plaintiffs' grant of franchises allowing Andrew Pennoyer to "operate a tax return preparation business using Liberty's system and Liberty's Marks within the Territory" and "operate a tax return preparation business using SiempreTax's system and SiempreTax's Marks in the Territory," and specifically at the Franchise Locations, Andrew Pennoyer agreed to certain obligations while operating under the Franchise Agreements.

40.    Under the Franchise Agreements, Andrew Pennoyer agreed to pay Plaintiffs, respectively, Royalties, **Exs. A-H** § 4(d), and an Advertising Fee, **Exs. A-H** § 4(f), which are calculated as a percentage of the franchisees' monthly Gross Receipts.  Andrew Pennoyer agreed to pay Plaintiffs the royalty and advertising fees by the fifth of each month.  **Exs. A-H** § 4(g).

41.    Andrew Pennoyer agreed to pay interest on amounts due under the Franchise Agreements at a rate of 18% compounded daily on any amounts that are fifteen days past due. **Exs. A-H** § 4(h).

42.    Plaintiffs record as accounts receivable ("A/R") the amounts due from a franchisee under the Franchise Agreements, e.g., Royalties and Advertising Fee.

43.    Section 26 of the Franchise Agreements contains a personal guaranty whereby Andrew Pennoyer agreed to abide by the terms therein including, specifically, those pertaining to governing law and forum selection, to make all payments specified in the Franchise Agreement. *See* **Exs. A-H.**

44.    Pursuant to Section 6(b)(i) of the Franchise Agreements, "Liberty [or SiempreTax] allows you to use Liberty's [or SiempreTax's] Marks to hold out your Liberty Tax Service business

to the public.  You agree to exclusively use Liberty's [or SiempreTax's] Marks as Liberty [or SiempreTax] develops them for this purpose only."  *See* **Exs. A -H.**

45.     Pursuant to Section 6(g) of the Franchise Agreements, "You must use the software that Liberty [or SiempreTax] provides.  You may not use, install or allow to be installed any other federal or state personal income tax return preparation or electronic filing software on any computer used in the Franchised Business, without Liberty's [or SiempreTax's] prior written consent."  *See* **Exs. A -H.**

46.     Pursuant to Section 10(a) of the Franchise Agreements, Andrew Pennoyer agreed to an in-term covenant not to compete, which provides that, during the term of the Franchise Agreements, Andrew Pennoyer agreed "not to directly or indirectly, for a fee or charge, in the United States or Canada, prepare or electronically file income tax returns, or offer Financial Products, except in your capacity as a Liberty Tax Service [or SiempreTax] franchisee using the Liberty Tax Service [or SiempreTax] system to offer such products and services."  *See* **Exs. A-H.**

47.     The in-term non-competition covenant contained in Section 10(a) of the Franchise Agreements is necessary to protect Plaintiffs' legitimate, protectable interest in their respective franchise businesses, including but not limited to:

        A.     Maintaining and protecting Plaintiffs' goodwill and customer loyalty;

        B.     Retaining customer relationships;

        C.     Plaintiffs' customer lists, customer identification, tax returns, and other confidential information; and

        D.     Preserving Plaintiffs' ability to facilitate the operation of Liberty and SiempreTax franchises where the Franchise Location is currently located.

48.     Pursuant to Section 10(h) of the Franchise Agreements, Andrew Pennoyer agreed "that the provisions of Section 10 are reasonable, valid and not contrary to the public interest."

*See* **Exs. A-H.**    To that end, Andrew Pennoyer agreed to "waive all defenses to the strict enforcement of Section 10," and further agreed that "Liberty [and SiempreTax are] entitled to a temporary restraining order, preliminary and/or permanent injunction for any breach of duties under any of the non-monetary obligations of Sections 9 and 10." *See* **Exs. A-H.**

49.    Pursuant to Section 12 of the Franchise Agreements, Andrew Pennoyer acknowledged that information provided by Plaintiffs to them regarding, among other things, Plaintiffs' respective Marks, methods, techniques, formats, specifications, procedures, information, systems, and customer and marketing information was confidential, and was to be used only in connection with the operation of the Franchised Business. *See* **Exs. A-H.**

50.    Pursuant to Sections 12(a) of the Franchise Agreements, Andrew Pennoyer agreed that "During the term of this Agreement and following the expiration or termination of this Agreement, you covenant not to directly or indirectly communicate, divulge, or use any Confidential Information for your personal benefit or the benefit of any other person or legal entity except as specifically provided by the terms of this Agreement or permitted by Liberty [or SiempreTax] in writing prior to disclosure." *See* **Exs. A-H.**

51.    Pursuant to Section 12(c) of the Franchise Agreements, Andrew Pennoyer agreed that he would "(a) not use the Confidential Information for any purpose other than the operation of the Franchised Business pursuant to this Agreement; (b) maintain absolute confidentiality of the Confidential Information during and after the term of this Agreement; (c) not make unauthorized copies of any portion of the Confidential Information disclosed in written form; and (d) adopt and implement all reasonable procedures, including, but not limited to, those Liberty [or SiempreTax] prescribes from time to time, to prevent unauthorized use of or disclosure of the Confidential Information." *See* **Exs. A-H.**

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

52.     Pursuant to Section 17(a) of each of the Franchise Agreements, Andrew Pennoyer agreed and acknowledged that Virginia law governs "all claims that in any way relate to or arise out of" the Franchise Agreements and/or the dealings between the parties to the Franchise Agreements.  *See* **Exs. A-H**.

**Obligations Pursuant to the Termination of the Franchise Agreements**

53.     On January 22, 2020, Plaintiffs provided Andrew Pennoyer with notice to cure several defaults for, including but not limited to, past monies due, abandonment, failure to open, failure to continue active operation of an approved office, failure to submit budget information, and failure to submit profit and loss statement, associated with the Franchise Agreements.  *See* **Ex. I**.

54.     On or about February 7, 2020, via a letter, Plaintiffs terminated the Franchise Agreements ("Termination Letter").  *See* **Ex. J**.  The Termination Letter stated that Andrew Pennoyer must comply with the post-termination provisions of the Franchise Agreements, which include, but are not limited to:

  - Refrain from any further use of any of the licensed marks;

  - Not identify yourself as a current or former franchisee of Franchisor;

  - Pay to Franchisor all monies owing;

  - Transfer all telephone numbers used in relation to the Franchised Businesses to Franchisor;

  - Deliver to Franchisor all paper and electronic copies of your customer lists, tax returns, files and records;

  - Deliver to Franchisor the Operations Manual and all updates which Franchisor loaned to you;

  - Upon Franchisor's request, assign any interest you have in any lease, sublease or any other agreement related to the Franchised Businesses;

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

- Upon Franchisor's request, provide to Franchisor any or all equipment, signs, trade fixtures and furnishings used in the Franchised Businesses; and

- Adhere to the provisions of the post-termination covenants not to compete and not to solicit.

*Id.*

55.     Pursuant to Section 10(b) of the Franchise Agreement, Andrew Pennoyer agreed to a post-termination covenant not to compete "[f]or a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business . . . you agree not to directly or indirectly, for a fee or charge, prepare or electronically file income tax returns . . . within the Territory or within a twenty-five miles of the boundaries of the Territory." *See* **Exs. A-H.**

56.     Pursuant to Section 10(d) of the Franchise Agreement, Andrew Pennoyer agreed to a post-termination covenant not to solicit, specifically that he would "not, within the Territory or within twenty-five (25) miles of the boundaries of the Territory, directly or indirectly solicit any person or entity served by any of your prior Liberty offices within the last twelve (12) months that were a Liberty franchisee, for the purpose of offering such person or entity, for a fee or charge, income tax preparation, electronic filing of tax returns, or Financial Products." *Id.*

57.     The post-termination non-competition and non-solicitation covenants contained in Section 10 of the Franchise Agreements is necessary to protect Plaintiffs' legitimate, protectable interest in their respective franchise businesses, including but not limited to:

A.     Maintaining and protecting Plaintiffs' goodwill and customer loyalty;

B.     Retaining customer relationships;

C.     Plaintiffs' customer lists, customer identification, tax returns, and other confidential information; and

D.    Preserving Plaintiffs' ability to facilitate the operation of Liberty and SiempreTax franchises where the Franchise Locations are currently located.

**Obligations Under the Notes**

58.    Andrew Pennoyer made four promissory notes (collectively, the "Notes") in favor of Liberty that are past due and owing. *See* **Exs. K-N.**

59.    Each of the Notes provides that interest shall accrue at a rate of 12% per annum. *Id.* p.1.

60.    Each of the Notes provides that Liberty will deduct monies that Andrew Pennoyer owes Liberty to apply to upcoming amounts due to Liberty and remit the balance of fees received under Liberty's Automatic Payment Transfer program. *Id.*

61.    In each of the Notes, Andrew Pennoyer agreed "to pay all attorneys' fees and other costs and expenses that Liberty may incur in connection with the collection or enforcement of [the Note]." *Id.*

62.    Each of the Notes set forth events that constitute default, including "(a) any default in the payment of any installment or payment of principal, interest, or other amounts due and payable under this Note;...(c) any default by Obligor in the performance of, or compliance with, any provision in this Note or other agreement, document or instrument to which any Obligor and Liberty are parties..." *Id.* p.2.

63.    Andrew Pennoyer agreed that, "If an event of default shall occur or if the undersigned shall fail to pay this Note in full at maturity, the entire unpaid balance of this Note and all accrued interest shall become immediately due and payable, at the option of Liberty, without notice or demand to any Obligor." *Id.*

64.    Andrew Pennoyer agreed that, "The signature of an individual or individuals on behalf of an entity constitutes the entity's agreement to such terms. In addition, the signatures of

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

all individuals below in any capacity also constitute their personal joint and several agreement to perform all the obligations in and relating to this Promissory Note." *Id.* p.3.

65.    Andrew Pennoyer agreed that each of the promissory notes "shall be construed in all respects and enforced according to the laws of the Commonwealth of Virginia." *Id.*

66.    Section 23 of the Franchise Agreements contains a personal guaranty whereby Andrew Pennoyer agreed to abide by the terms therein including, specifically, those pertaining to governing law and forum selection, to make all payments specified in the Franchise Agreements, and to pay any promissory notes and debt owed to Plaintiffs. *See* **Exs. A-H.**

67.    On December 22, 2015, Andrew Pennoyer made a promissory note in favor of Liberty in the principal amount of $67,160.60 (the "LI-1601/LI-1602/RO-1601/RO-1602/UN-1601 Note"). **Ex. K.** Pursuant to the LI-1601/LI-1602/RO-1601/RO-1602/UN-1601 Note, Andrew Pennoyer was obligated to pay the principal and all remaining interest on February 28, 2016. *Id.* p.1.

68.    On June 28, 2017, Andrew Pennoyer made a promissory note in favor of Liberty in the principal amount of $56,000.00 (the "RO-1801/LI-1802 Note"). **Ex. L.** Andrew Pennoyer personally guaranteed the RO-1801/LI-1802 Note. Pursuant to the RO-1801/LI-1802 Note, Andrew Pennoyer was obligated to pay interest only on February 28, 2018, $14,000.00 plus interest on February 28, 2019, $14,000.00 plus interest on February 28, 2020, $14,000.00 plus interest on February 28, 2021, and $14,000.00 plus all remaining interest on February 28, 2022. *Id.* p.1.

69.    On January 13, 2018, Andrew Pennoyer made a promissory note in favor of Liberty in the principal amount of $40,000.00 (the "LI-1801/ADV-1801 Note"). **Ex. M.** Andrew Pennoyer personally guaranteed the LI-1801/ADV-1801 Note. Pursuant to the LI-1801/ADV-

1801 Note, Andrew Pennoyer was obligated to pay $13,333.33 plus interest on February 28, 2018, $13,333.33 plus interest on February 28, 2019, $13,333.33 plus all remaining interest on February 28, 2020. *Id.* p.1.

70.    On January 31, 2019, Andrew Pennoyer made a promissory note in favor of Liberty in the principal amount of $78,541.53 (the "OP-2019-2 Note"). **Ex. N.** Andrew Pennoyer personally guaranteed the OP-2019-2 Note. Pursuant to the OP-2019-2 Note, Andrew Pennoyer was obligated to pay accrued interest on February 27, 2019. *Id.* p.1.

**Unfair Competition and Breach of In-Term and Post-Termination Non-Competition Covenants**

71.    Pursuant to FL026, Andrew Pennoyer operated a Franchise Location at 1816 US Highway 19, Holiday, Florida 34691.

72.    Neither Nicholas Pennoyer nor Heather Pennoyer are Liberty franchisees.

73.    On approximately April 15, 2019, Nicholas and Heather Pennoyer organized Freedom Tax, of which they are authorized members.

74.    Upon information and belief, Nicholas Pennoyer is Andrew Pennoyer's son and was a manager of the Franchised Businesses.

75.    Upon information and belief, Heather Pennoyer is Andrew Pennoyer's daughter-in-law and Nicholas Pennoyer's wife.

76.    Freedom Tax's principal place of business is 1816 US Highway 19, Holiday, Florida 34691, which is the FL026 Franchise Location.

77.    Freedom Tax's mailing address is 3095 Spring Oak Avenue, Palm Harbor, Florida 34984, which is Andrew Pennoyer's last known residential address. *See* **Exs. A-H.**

78.    Prior to the termination of the Franchise Agreements, Andrew Pennoyer allowed or orchestrated Freedom Tax's operations at the FL026 Franchise Location, performing tax

preparation services to customers Andrew Pennoyer previously served while he was a Liberty franchisee, but filing the tax returns outside of the Liberty system.

79.    Nicholas Pennoyer's Freedom Tax business card contains the "$50 Cash in Hand" Mark similar to Liberty's "Get $50 Cash Now" or "Get $50 Cash" promotion, USPTO Trademark Registration No. 3480370.

80.    The business names "Liberty" and "Freedom" share the same connotation and are synonyms.  "Liberty," as in Liberty Tax Service, the franchisor, translates to Spanish as "Libertad." "Libertad" is also a translation for "Freedom," as in the competing business's fictitious name, Freedom Tax Service.[1]

**Breach of the Franchise Agreement Monetary Obligations**

81.    As of March 13, 2020, Andrew Pennoyer has not paid Liberty the outstanding A/R in the amount of $489,593.36.

**Breach of the Notes**

82.    As of March 13, 2020, Andrew Pennoyer is in default on each of the Notes because he has failed to make payments that are due and owing and/or has failed to perform as set forth in the Franchise Agreements.

83.    As of March 13, 2020, Andrew Pennoyer has not paid Liberty the outstanding principal balance on the LI-1601/LI-1602/RO-1601/RO-1602/UN-1601 Notes in the amount of $44,773.74 and the outstanding total interest of $27,944.62.

---

[1] Upon information and belief, Defendants targeted the Spanish speaking population in the areas associated with the FL026 Franchise Location.

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

84.    As of March 13, 2020, Andrew Pennoyer has not paid Liberty the outstanding principal balance on the LI-1801/ADV-1801 Note in the amount $520,841.29 and the outstanding total interest of $15,789.66

85.    As of March 13, 2020, Andrew Pennoyer has not paid Liberty the outstanding principal balance on the OP-2019-2 Note in the amount of $19,277.45 and the outstanding total interest of $2,130.87.

86.    As of March 13, 2020, Andrew Pennoyer has not paid Liberty the outstanding principal balance on the RO-1801/LI-1802 Notes in the amount of $45,158.71 and the outstanding total interest of $11,745.93.

87.    In total, Andrew Pennoyer has not paid Liberty the outstanding amount of $160,051.19 and he has not paid Liberty the outstanding total interest amount of $50,515.01 due and owing on all of the Notes he made.

<u>**COUNT I**</u>
<u>**Breach of the Franchise Agreements**</u>
**(Equitable Claim Against Andrew Pennoyer)**

88.    Plaintiffs incorporate herein by reference the preceding Paragraphs as if set forth herein verbatim.

89.    The Franchise Agreements are valid and enforceable.

90.    Plaintiffs have performed every obligation and condition required of them under the Franchise Agreements.

91.    Pursuant to Section 6(b)(i) of the FL026 Franchise Agreement, Andrew Pennoyer agreed to only use Liberty's Marks to gain business for Liberty and not to divert business to another company.  *See* <u>**Exs. A-H**</u>.

92.     Andrew Pennoyer has and is using Liberty's Marks to solicit customers and lure them into the Franchise Location under the guise that Liberty is performing and filing their tax return when Defendants are preparing and filing tax returns through Freedom Tax.

93.     Pursuant to Section 10(a) of the FL026 Franchise Agreement, Andrew Pennoyer agreed to the in-term non-competition covenant.

94.     Pursuant to Section 10(b) of the FL026 Franchise Agreement, the SiempreTax franchise agreement for the FL026 Territory, and the other Franchise Agreements, Andrew Pennoyer agreed to the post-termination non-competition covenant.

95.     Andrew Pennoyer has and is currently competing against Plaintiffs by directly or indirectly preparing and electronically filing income tax returns through Freedom Tax at the FL026 Franchise Location, which is within 25-miles of the FL024, FL327, FL054 and FL047 Franchise Locations.

96.     Pursuant to Section 10(d) of the Franchise Agreements, Andrew Pennoyer agreed to the post-termination non-solicitation covenant.

97.     Andrew Pennoyer has and is currently soliciting customers for whom he prepared tax returns in the 12 months preceding the termination of the Franchise Agreements to enter the FL026 Franchise Location and have their taxes prepared by Freedom Tax.

98.     Andrew Pennoyer agreed not to disclose or use Liberty's Confidential Information except as authorized in Section 12 of the FL026 Franchise Agreement.

99.     Andrew Pennoyer committed the following acts and omissions in violation of Section 12 of the FL026 Franchise Agreement:

        A.     Disclosing Liberty's Confidential Information, including methods of operations, customer information, and marketing information, to other persons and entities, including Nicholas Pennoyer, Heather Pennoyer, and Freedom Tax, without the consent or authorization of Liberty; and

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

B.     Using Liberty's Confidential Information for purposes other than the operation of the Franchised Business, including for the purpose of operating Freedom Tax to compete with the FL026 FL024, FL327, FL054 and FL047 Franchised Businesses and Liberty.

100.    Each of Andrew Pennoyer's breaches set forth in the foregoing paragraphs constitute a material breach of the Franchise Agreements.

101.    As a direct and proximate result of these breaches, Plaintiffs have incurred, and will continue to incur substantial losses, fees, and expenses for which Andrew Pennoyer is liable.

102.    As a result of Andrew Pennoyer's past, present, and potential breaches, Plaintiffs have suffered and will continue to suffer actual, substantial, and irreparable damage, including, but not limited to:

A.     Loss of customer goodwill and loyalty;

B.     Loss of business opportunities and relationships to provide tax preparation services and related services;

C.     Loss of customers;

D.     Loss of profits;

E.     Loss of franchisee stability;

F.     Loss of ability to sell other franchises;

G.     Loss of value in confidential business information;

H.     Loss of competitive advantage in the Holiday, Florida area and the FL026, FL024, FL327, FL054, and FL047 Territories;

I.     Attorneys' fees; and

J.     Cost of this action.

103.    Plaintiffs have been and will be irreparably harmed by Andrew Pennoyer's actions, and monetary damages are an insufficient remedy in that they can only potentially quantify a limited loss of customers, but cannot take into account the continuing irreparable damage to the

value of Plaintiffs' confidential information, goodwill, customer loyalty, and its ability to sell franchises, all of which are caused by Andrew Pennoyer's ongoing violations.

104.    Unless his wrongful conduct is enjoined, Andrew Pennoyer will continue to breach his obligations by continuing to breach the non-competition covenants, continuing to use Liberty's Marks to divert business to Freedom Tax, and continuing to disclose and use Plaintiffs' confidential information.

## COUNT II
### Breach of the Franchise Agreements
### (Monetary Claim Against Andrew Pennoyer)

105.    Plaintiffs incorporate herein by reference the preceding Paragraphs as if set forth herein verbatim.

106.    The Franchise Agreements are valid and enforceable.

107.    Liberty has performed every obligation and condition required of it under the FL026 Franchise Agreement.

108.    As of February 10, 2020, Andrew Pennoyer has not paid Liberty the outstanding A/R in the amount of $489,593.36.

109.    As a direct and proximate result of Andrew Pennoyer's breach of the FL026 Franchise Agreement, Liberty has incurred, and will continue to incur substantial losses, fees, and expenses for which Andrew Pennoyer is liable.

## Count III
### Breach of the Franchise Agreements
### (Monetary Claim Against Andrew Pennoyer)

110.    Plaintiffs incorporate all previous paragraphs as though fully set forth herein verbatim.

111.    The Franchise Agreements are valid and enforceable.

112.    Plaintiffs have performed every obligation and condition required of them under the Franchise Agreements.

113.    Pursuant to Section 10(a) of the FL026 Franchise Agreement, Andrew Pennoyer agreed to the in-term non-competition covenant.

114.    On February 6, 2020, Plaintiffs terminated the Franchise Agreements.

115.    Pursuant to Section 10(b) of the Franchise Agreements, Andrew Pennoyer agreed to the post-termination non-competition covenant.

116.    Pursuant to Section 10(c) of the Franchise Agreements, Andrew Pennoyer agreed to the post-termination non-solicitation covenant.

117.    Andrew Pennoyer has been and is currently competing against Plaintiffs by using Liberty Marks to solicit customers into the FL026 Franchise Location and then preparing and electronically filing income tax returns through Freedom Tax.  The FL026 Franchise Location is within 25-miles of the FL024, FL327, FL054 and FL047 Franchise Locations.

118.    Andrew Pennoyer's breaches set forth in the foregoing paragraphs are material breaches of the Franchise Agreements.

119.    Pursuant to Section 10(h), Andrew Pennoyer agreed that the non-competition and non-solicitation provisions of Section 10 of the Franchise Agreements "are reasonable, valid and not contrary to the public interest" and that he "waive[d] all defenses to the strict enforcement of Section 10." **Exs. A-H**.

120.    Further, pursuant to Section 10(h), Andrew Pennoyer agreed that Liberty and SiempreTax are "entitled to a temporary restraining order, preliminary and/or permanent injunction for any breach of duties under any of the non-monetary obligations of Sections 9 and 10." *Id.*

121.    As a direct and proximate result of Andrew Pennoyer's breaches of Sections 10(a) of the FL026 Franchise Agreement and breaches of Sections 10(b) and 10(c) of the Franchise Agreements, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial, for which Andrew Pennoyer is liable, including, but not limited to, compensatory damages, consequential damages, and disgorgement of Andrew Pennoyer's profits.

## COUNT IV
## Breach of the Notes
### (Against Andrew Pennoyer)

122.    Plaintiffs incorporate all previous paragraphs as though fully set forth herein verbatim.

123.    The Notes are valid and enforceable.

124.    Pursuant to the LI-1601/LI-1602/RO-1601/RO-1602/UN-1601 Note, Andrew Pennoyer was obligated to pay the principal and the remaining interest on February 28, 2016. *See* **Ex. K** p.1.

125.    Pursuant to the RO-1801/LI-1802 Note, Andrew Pennoyer was obligated to pay interest only on February 28, 2018, $14,000.00 plus interest on February 28, 2019, $14,000.00 plus interest on February 28, 2020, $14,000.00 plus interest on February 28, 2021, and $14,000.00 plus all remaining interest on February 28, 2022. **Ex. L** p.1. Andrew Pennoyer is in default for non-payment, therefore, the entire principal and accrued interest are due and owing immediately.

126.    Pursuant to the LI-1801/ADV-1801 Note, Andrew Pennoyer was obligated to pay $13,333.33 plus interest on February 28, 2018, $13,333.33 plus interest on February 28, 2019, $13,333.33 plus all remaining interest on February 28, 2020. **Ex. M** p.1. Andrew Pennoyer is in default for non-payment, therefore, the entire principal and accrued interest are due and owing immediately.

GORDON REES SCULLY MANSUKHANI
100 SE Second Street, Suite 3900, Miami, FL 33131

127.    Pursuant to the OP-2019-2 Note, Andrew Pennoyer was obligated to pay the principal plus accrued interest on February 27, 2019.  **Ex. N** p.1.  Andrew Pennoyer has failed to satisfy the amounts due and owing under the Note.

128.    In total, Andrew Pennoyer has not paid Liberty the outstanding amount of $160,051.19 and he has not paid Liberty the outstanding total interest amount of $50,515.01 due and owing on all of the Notes he made.

129.    In the Notes, Andrew Pennoyer agreed "to pay all attorneys' fees and other costs and expenses that Liberty may incur in connection with the collection or enforcement of [the Note]."  **Exs. K-N** p.1.

130.    As maker of the Notes, Andrew Pennoyer is personally liable for all amounts due and owing under the Note.

131.    Pursuant to Section 23 of the Franchise Agreements, Andrew Pennoyer is personally liable for all amounts due and owing under the Notes. *See* **Exs. A-H.**

132.    By virtue of Andrew Pennoyer's failure to satisfy the amounts due and owing under the Notes, he has harmed Liberty in an amount equal to the full value of the Notes, including accruing interest, and the attorneys' fees and costs incurred by Liberty in connection with the collection and enforcement of the Notes.

### COUNT V
### Tortious Interference with Contract
#### (Against All Defendants)

133.    Plaintiffs incorporate all previous Paragraphs as though fully set forth herein verbatim.

134.    The Franchise Agreements are valid and enforceable.

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

135.    Nicholas Pennoyer and Heather Pennoyer knew of the existence of the Franchise Agreements.  Nicholas Pennoyer is Andrew Pennoyer's son and was a manager of the Franchised Businesses.  Heather Pennoyer is Nicholas Pennoyer's wife and Andrew Pennoyer's daughter-in-law.

136.    Nicholas Pennoyer and Heather Pennoyer are disclosed as the only authorized members of Freedom Tax.  Tax know of the existence of the Franchise Agreements through the knowledge of Nicholas Pennoyer and Heather Pennoyer.  Freedom Tax further know of the existence of the FL026 Franchise Agreement because Freedom Tax is operating out of the FL026 Franchise Location, which displays Liberty Marks.

137.    Nicholas Pennoyer and Heather Pennoyer engaged in the intentional and improper conduct described herein, which induced Andrew Pennoyer to breach various provisions of the Franchise Agreements, including, but not limited to the following:

A.    Preparing and electronically filing income tax returns and providing Financial Products through Freedom Tax from the FL026 Franchise Location during the term of the FL026 Franchise Agreement;

B.    Preparing and electronically filing income tax returns and providing Financial Products through Freedom Tax from the FL026 Franchise Location, which is within 25 miles of the FL024, FL327, FL054 and FL047 Franchise Locations, after Plaintiffs' February 6, 2020 termination of the Franchise Agreements;

C.    Using Liberty's Marks to solicit business for Freedom Tax;

D.    Disclosing Plaintiffs' Confidential Information, including methods of operations, customer information, and marketing information, to other persons and entities, including Nicholas Pennoyer, Heather Pennoyer, and Freedom Tax, without the consent or authorization of Liberty or SiempreTax; and

E.    Using Liberty's Confidential Information for purposes other than the operation of the FL026 Franchised Business, including for the purpose of operating Freedom Tax and soliciting Liberty's and SiempreTax's customers.

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

138.    As a result of Nicholas Pennoyer, Heather Pennoyer, and Freedom Tax's tortious conduct, Andrew Pennoyer breached the Franchise Agreements with Liberty and SiempreTax.

139.    Nicholas Pennoyer, Heather Pennoyer, and Freedom Tax's tortious interference has caused Plaintiffs to suffer irreparable injury and Plaintiffs will continue to suffer irreparable injury unless Nicholas Pennoyer, Heather Pennoyer, and Freedom Tax are enjoined from further tortious interference with Andrew Pennoyer's compliance with the terms of the Franchise Agreements.

140.    As a direct and proximate result of Nicholas Pennoyer, Heather Pennoyer, and Freedom Tax's tortious interference, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial, including, but not limited to, compensatory damages, consequential damages, and disgorgement of Nicholas Pennoyer, Heather Pennoyer, and Freedom Tax's profits.

**COUNT VI**
**Federal Trademark Infringement**
**(Against All Defendants)**

141.    Plaintiffs incorporate herein by reference the preceding Paragraphs as if set forth herein verbatim.

142.    Liberty is the owner of the trademarks "LIBERTY TAX," Registration No. 2,465,670; "LIBERTY TAX SERVICE," Registration No. 2,314,991, and "CASH IN A FLASH," Registration No. 3,480,370, among other registered trademarks.

143.    Defendants are using Liberty's Marks or substantially similar marks to identify their competing services provided from the FL026 Franchise Location.

144.    Defendants' use of the name Freedom Tax Service and the accompanying signage is substantially similar to Liberty Tax Service and Liberty Tax.

GORDON REES SCULLY MANSUKHANI
100 SE Second Street, Suite 3900, Miami, FL 33131

145.    The business names "Liberty" and "Freedom" share the same connotation and are synonyms.  "Liberty," as in Liberty Tax Service, the franchisor, translates to Spanish as "Libertad."  "Libertad" is also a translation for "Freedom," as in the competing business's fictitious name, Freedom Tax Service.

146.    Freedom Tax Service is therefore confusingly similar to Liberty Tax Service.

147.    Defendants' use of the promotion "$50 Cash in Hand" is substantially similar to Liberty's "Get $50 Cash Now" or "Get $50 Cash" promotion, Trademark Registration No. 3,480,370.

148.    "$50 Cash in Hand" is confusingly similar to "Get $50 Cash Now" or "Get $50 Cash".

149.    Liberty did not consent to Defendants' use of Liberty's Marks for the sale, offer of sale, or advertising of Freedom Tax's goods or services and Defendants' use is likely to cause confusion, cause mistake, and to deceive the public.

150.    Defendants therefore are infringing Liberty's Marks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

151.    Through their unlawful use and display of the Marks, Defendants have profited and Liberty has been damaged.

152.    Defendants' acts have been and are being done knowingly and intentionally to cause confusion, cause mistake, and/or to deceive.

153.    As a result, Liberty has suffered and continues to suffer irreparable injury and has incurred and continues to incur monetary damage in an amount to be determined at trial.

GORDON REES SCULLY MANSUKHANI
100 SE Second Street, Suite 3900, Miami, FL 33131

## COUNT VII
## False Designation and Misrepresentation of Origin
### (Against All Defendants)

154.    Plaintiffs incorporate herein by reference the preceding Paragraphs as if set forth herein verbatim.

155.    Liberty is the owner of the trademarks "LIBERTY TAX," Registration No. 2,465,670; "LIBERTY TAX SERVICE," Registration No. 2,314,991, and "CASH IN A FLASH," Registration No. 3,480,370, among other registered trademarks.

156.    Defendants are using Liberty's Marks or substantially similar marks to identify the services provided from the FL026 Franchise Location as those of a Liberty franchisee. However, Defendants are actually providing the services through Freedom Tax.

157.    Defendants' use of the name Freedom Tax Service and the accompanying signage is likely to confuse consumers to believe that the source of the services are Liberty Tax Service and Liberty Tax.

158.    The business names "Liberty" and "Freedom" share the same connotation and are synonyms. "Liberty," as in Liberty Tax Service, the franchisor, translates to Spanish as "Libertad." "Libertad" is also a translation for "Freedom," as in the competing business's fictitious name, Freedom Tax Service.

159.    Freedom Tax Service is therefore likely to cause confusion, cause mistake, and/or deceive as to Freedom Tax's affiliation, connection, or association with Liberty Tax or Liberty Tax Service, or as to the origin, sponsorship, or approval of Freedom Tax's goods, services, or commercial activities.

GORDON REES SCULLY MANSUKHANI
100 SE Second Street, Suite 3900, Miami, FL 33131

160.    Defendants' use of the promotion "$50 Cash in Hand" is substantially similar to Liberty's "Get $50 Cash Now" or "Get $50 Cash" promotion, Trademark Registration No. 3,480,370.

161.    "$50 Cash in Hand" is confusingly similar to "Get $50 Cash Now" or "Get $50 Cash" and is therefore likely to cause confusion, cause mistake, and/or deceive as to Freedom Tax's affiliation, connection, or association with Liberty, or as to the origin, sponsorship, or approval of Freedom Tax's goods, services, or commercial activities.

162.    The unlawful conduct of Defendants described herein constitutes false designation of origin and misrepresentation in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

163.    As a direct and proximate result of Defendants' wrongful conduct, Liberty has suffered damages to the value of the Marks and to customer goodwill.

164.    Defendants' acts have been and are being done knowingly and intentionally to cause confusion, to cause mistake, and/or to deceive.

165.    As a result, Liberty has suffered and continues to suffer irreparable injury and has incurred and continues to incur monetary damage in an amount to be determined at trial.

## COUNT VIII
## Federal Trademark Dilution
### (Against All Defendants)

166.    Plaintiffs incorporate herein by reference the preceding Paragraphs as if set forth herein verbatim.

167.    Liberty is the owner of the trademarks "LIBERTY TAX," Registration No. 2,465,670, registered on July 3, 2001; "LIBERTY TAX SERVICE," Registration No. 2,314,991,

registered on February 1, 2000; and "CASH IN A FLASH," Registration No. 3,480,370, registered on August 5, 2008, among other registered trademarks.

168.    The Marks are famous trademarks under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

169.    The Marks are distinctive.

170.    Liberty uses the Marks to identify it and its franchisee's tax preparation services in interstate commerce.

171.    Freedom Tax began using the mark "Freedom Tax Service" and "$50 Cash in Hand" in late 2019, well after Liberty's Marks became famous and distinctive.

172.    Defendants' actions and conduct, as set forth above, constitute dilution of the famous Marks under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

173.    Liberty is entitled to injunctive relief under 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c)(1).

174.    As a direct and proximate result of Defendants' wrongful conduct, Liberty has suffered and will continue to suffer irreparable damage to reputation and goodwill for which it has no adequate remedy at law.

175.    Pursuant to 15 US.C. § 1117, Liberty is entitled to recover damages from Defendants caused by their unlawful use of the Marks, in an amount to be determined at trial.

**COUNT IX**
**Defend Trade Secrets Act**
**(Against All Defendants)**

176.    Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

177. The Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, provides a private civil action for the misappropriation of a trade secret that is related to a product or service used in, or intended for use in, interstate or foreign commerce.

178. Liberty owns numerous trade secrets, including but not limited to, its Operations Manual, training manuals, training programs, marketing strategies, marketing programs, and customer lists, related to products and services used in interstate commerce.

179. Each of Liberty's trade secrets derives independent economic value from not being generally known to and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

180. Liberty's trade secrets are not readily ascertainable by the public as they are disclosed only to franchisees in the operation of a franchised business pursuant to a franchise agreement.

181. During the operation of the Franchised Business, Liberty's trade secrets were disclosed to Andrew Pennoyer for the sole purpose of operating the Franchised Business pursuant to the Franchise Agreements.

182. Liberty has taken extensive measures to preserve and protect these trade secrets for the purpose of maintaining its competitive advantage in the marketplace.

183. The Franchise Agreement explicitly provides for the protection of such trade secrets, including requiring the delivery of all originals and copies of such information to Liberty upon expiration, termination, or nonrenewal of the Franchise Agreements, requiring former franchisees and their representatives to maintain the confidentiality of the information, and requiring former franchisees and their representatives to never use the information for any purpose other than operating a Franchised Business pursuant to the Franchise Agreements.

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

184.    Liberty required and Andrew Pennoyer agreed that upon expiration, termination, or nonrenewal of the Franchise Agreements, he would never use, disclose, or permit the use or disclosure of Liberty's trade secrets in any manner whatsoever.

185.    Freedom Tax is a limited liability company had actual knowledge of the terms of the Franchise Agreement and access to Confidential Information.

186.    Nicholas Pennoyer and Heather Pennoyer are authorized members of Freedom Tax who have a close familial relationship with Andrew Pennoyer such that, under the circumstances, they had both actual knowledge of the terms of the Franchise Agreements and access to Confidential Information.  Nicholas Pennoyer further was a manager of the Franchised Businesses.

187.    Without authority or consent from Liberty, Defendants used the business know-how, customer lists, and customer contact information that they obtained while operating the former Franchised Business to obtain business for themselves, thereby misappropriating Liberty's trade secrets

188.    Upon information and belief, Defendants used and are utilizing Liberty's confidential system and materials and customer lists after the expiration of the Franchise Agreements and Liberty has not and would not consent to or authorize such use.

189.    Defendants intentionally and without Liberty's permission or authorization misappropriated and/or disclosed Liberty's trade secrets for their own economic benefit and with the intention and knowledge that their conduct would injure Liberty by, for example, causing Liberty to lose any customers successfully solicited by Defendants.

190.    As a direct and proximate result of Defendants' willful, improper, and unlawful disclosure and Defendants' willful, improper, and unlawful use of Liberty's trade secrets, Liberty has suffered and will continue to suffer irreparable injury.

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

191.    Pursuant to 18 U.S.C. § 1836(b)(3)(A), Defendants' actual and threatened use and misappropriation of Liberty's trade secrets should be enjoined from further disclosure or use of Liberty's trade secrets.

192.    Defendants' conduct in misappropriating Liberty's trade secrets was and continues to be willful and malicious, warranting an award of exemplary damages in accordance with 18 U.S.C. § 1836(b)(3)(C) and an award of reasonable attorney's fees in accordance with 18 U.S.C. § 1836(b)(3)(D).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.    For the following injunctive relief:

A.    Enjoin Andrew Pennoyer from breaching the non-competition and non-solicitation covenants;

B.    Enjoin Defendants from using any of Liberty's Marks or any confusingly similar name, device, mark, service mark, trademark, trade name, slogan, or symbol, including, but not limited to, "Freedom Tax Service" and "$50 Cash in Hand", to obtain revenue for Nicholas Pennoyer, Heather Pennoyer, or Freedom Tax or any other individual or company that is not the Franchised Business;

C.    Enjoin Nicholas Pennoyer, Heather Pennoyer, and Freedom Tax from using any of Plaintiffs' confidential information and trade secrets, including, but not limited to, customer lists and Operations Manuals;

D.    Enjoin Defendants from providing tax preparation services at the FL026 Franchise Location or anywhere within 25 miles of the FL026 Territory for a period of two years;

E.    Enjoin Defendants from diverting or attempting to divert any customer or business from Liberty or to solicit or endeavor to obtain the business of any person who shall have been a customer of the FL026 Franchise Location for a period of two years;

F.    Enjoin Nicholas Pennoyer, Heather Pennoyer, and Freedom Tax from tortiously interfering with the FL026 Franchise Agreement.

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

2.      For a monetary award against Defendants in excess of $345,000 to be proven at trial, including, but not limited to, compensatory damages, expectancy damages, punitive damages, and disgorgement of profits;

3.      For a monetary award against Andrew Pennoyer for Plaintiffs' attorneys' fees and costs, in an amount to be proven at trial;

4.      For pre- and post-judgment interest; and

5.      For such other relief as the Court deems just and appropriate.

Dated: March 18, 2020                       Respectfully submitted,

GORDON REES SCULLY MANSUKHANI, LLP

By:  /s/ Capri Trigo
Capri Trigo
Florida Bar No. 28564
Miami Tower
100 SE Second Street, Suite 3900
Miami, Florida 33131
Telephone: (305) 428.5323
Facsimile: (877) 634.7245
Email: ctrigo@grsm.com

*Counsel for JTH Tax LLC d/b/a Liberty Tax Service and SiempreTax+ LLC*

DocuSign Envelope ID: DB538B8C-BF35-4F27-94J2-405A5432816D

## <u>VERIFICATION</u>

ANTHONY CALI does hereby verify and state pursuant to 28 U.S.C. § 1746:

I am Regional Director for JTH Tax LLC d/b/a Liberty Tax Service ("Liberty").  I have read the foregoing Verified Complaint and know the contents thereof and state the allegations are true. I base this Verification on my own knowledge, except as to matters therein stated to be alleged upon information and belief and, as to those matters, I believe them to be true.  The grounds of my knowledge, information, and belief are derived from my position as Regional Director at Liberty, my personal involvement in the event underlying this litigation, and general investigation of the facts and circumstances described in the Verified Complaint, including, without limitation, my review of Liberty and SiempreTax+ LLC's records and conversations with Liberty and SiempreTax+ LLC's employees.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the _____17th_____ day of March, 2020.

DocuSigned by:

C200D628F84C4A5...

ANTHONY CALI